**AMERICAN LIGHTERAGE CORP. et al. v. WILLARD et al.**

Civ. 12328.

United States District Court
E. D. New York.

April 24, 1952.

Albert P. Thill, Brooklyn, N. Y., for plaintiffs.

Frank J. Parker, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., for defendant Deputy Commissioner.

BYERS, District Judge.

These are cross motions concerning the award by a Deputy Commissioner of the Department of Labor of compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. to the widow of the Captain of the service-lighter Lexington who was drowned in this harbor on June 12, 1950 under undisclosed circumstances. Apparently the decedent fell into the waters at the foot of Court Street, while moving from a dock

in the Bushey yard, across a float and the barge Lillian Petrie, to the Lexington which was moored alongside the latter. He and his companion Oleson had stopped in a saloon and partaken of the traditional "couple of beers" on their way to these respective craft at around or later than 11 p. m. and the decedent Anderson was "in a hurry" to reach the Lexington prior to midnight when she was to be taken in tow light to Bayonne, and there to receive a load of oil in drums.

Olesen's testimony is vague, but whether by design or otherwise, as to Anderson's disappearance from or failure to appear on the Lexington, it is unnecessary to ascertain for present purposes, since the latter's body was found afloat across the slip on the morning of the 13th. It is possible to surmise that perhaps he was sufficiently employed in interstate commerce to explain why no claim was asserted under the Workmen's Compensation Law of New York, McK. Consol. Laws, c. 67, if that is the fact, although its coverage applied to employees of the American Lighterage Corporation, one of these plaintiffs. A more realistic form of litigation would be presented in an action by the employer against the insurance company for alleged breach of the policy for failure to pay this loss; in that guise the contract of insurance would be in evidence, and the question if any of coverage of this decedent could be decided in light of its terms.

As it is, the matter must be disposed of by way of examining the report of the Deputy Commissioner to whom the policy was not submitted.

The question for decision is the frequently controverted one of whether Anderson was an "officer or member of a crew of a vessel" so as not to fall within the jurisdiction of the Deputy Commissioner under this Act.

The order under review recites:

(1) That the employer is a common carrier engaged in the transportation of freight by water in and about this harbor. The testimony shows that in addition the Lexington went as far as New Haven, Bridgeport, Greenwich, Troy and Albany.

(2) That Anderson was employed as Captain aboard the Lexington which was without means of self-propulsion and steering apparatus, the dimensions of which were 115 x 32½ (depth of sides not stated). This vessel had a cargo capacity of 400-450 tons.

There was a cabin on deck, equipped with a bunk, blanket, stove, cooking utensils and a clothes closet.

(3) The lighter was equipped with a gasoline hoist for loading and discharging cargo, which was operated when necessary by the decedent. The testimony as to the frequency of this service is vague, but probably means that on occasion when taking cargo from a dock, other than barrel cargo which would be rolled or trucked, the gasoline hoist was used, if there was no hoist on the dock.

(4) That the primary and principal duties of the decedent were

(a) supervision of the loading and unloading of cargo on the lighter to secure proper stowage;

(b) to check cargo on the dock, and obtain receipts and B/Ls.

(5) His incidental duties were

(a) handling lines;

(b) attending to lights;

(c) minor repairs;

(d) pumping water from bilges (this means sounding but order omits that).

(6) That he worked on a daily basis, eight hours per day, with time and a half for overtime; that he was not required to have "seamen's papers"; that he was not required to sleep aboard the lighter, and did not eat aboard.

(7) That on June 12, 1950 he received telephone instructions from his employer to go to the lighter in time for her projected departure in tow for Bayonne at midnight.

The foregoing constitutes the material facts as found by the Deputy Commissioner, based upon the testimony of Eugene Murphy called by the claimant, who was the business manager of the Lighter Captains' Union, and James Tilney, president of American Lighterage Corporation, who

testified on behalf of the plaintiff of that name.

There is no material conflict in their testimony concerning the duties of Anderson, although the former was stating what he knew in a general sense, rather than because of his own personal observations of this decedent within any definite period prior to the drowning.

The witness Tilney evidently was better informed, from what he had personally seen, of the nature and character of Anderson's duties. The following questions by the Deputy Commissioner and the answers appear:

"Q. I believe you stated that his duties, among other things, were to supervise the loading and the unloading of the lighter? A. Yes, sir; and to see that it was properly stowed in loading.

"Q. And that very infrequently as you said, he engaged in the operation of the hoist for the loading of cargo? A. Occasionally, and pumping out the bilge."

*Re-direct*

"Q. * * * (Quoting the above) * * * was that his principal duty in so far as loading and unloading is concerned or is that the principal duty overall as far as the duties of the Captain of a lighter is concerned?

\* \* \* \* \* \*

"A. Well he has to take care of the safety of the vessel."

The ensuing testimony is to the effect that the greater part of the decedent's time was required in the supervision of the loading and unloading operations.

Thus the facts seem to closely resemble those presented in Wm. Spencer & Son etc. v. Lowe, 2 Cir., 152 F.2d 847.

This claimant rested under the necessity of presenting her case through the testimony of witnesses other than the claimant, who was available in the Spencer case; but that seems not to furnish any reason for disagreement with the Deputy Commissioner, since as above stated there is no substantial variance in the narratives presented to him.

The observation in the Spencer opinion [152 F.2d 848] that the incidental duties listed under 5 above were "not enough to take him out of the class of harbor workers for whom the Act was intended to provide compensation" seems to apply with equal force to the record as here made, in view of the findings which have been recited.

The plaintiff cites Long Island etc. v. Lowe, 2 Cir., 145 F.2d 516, but implausibly in view of the variable nature of that decedent's occupation, which therefore required a precise showing that on the day of his drowning he was fairly within the coverage of the Act. Anderson's employment had been that of a lighter captain for at least two years prior to the date in question.

That each case turns upon its own facts has been stated as recently as Merritt-Chapman etc. v. Willard, 2 Cir., 189 F.2d 791.

Here it is thought to be clear that the award by the Deputy Commissioner should be sustained.

Plaintiffs' motion denied, defendant's motion granted. Settle order.