William F. FERGUSON, Plaintiff,

v.

ERIE RAILROAD COMPANY and William Spencer & Son Corporation, Defendants.

ERIE RAILROAD COMPANY, Defendant and Third-Party Plaintiff,

v.

WILLIAM SPENCER & SON CORPORATION, Third-Party Defendant.

United States District Court
S. D. New York.

April 30, 1964.

DiCostanzo, Klonsky & Sergi, Brooklyn, N. Y., for plaintiff, Robert Klonsky, Brooklyn, N. Y., of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant Erie R. Co., J. Roger Carroll, New York City, of counsel.

Perrell, Nielsen & Stephens, New York City, for defendant William Spencer & Son, Corp., Tidal B. Henry, Jr., and John W. Fuhrman, New York City, of counsel.

FEINBERG, District Judge.

This is an action by plaintiff William F. Ferguson against Erie Railroad Company ("Erie") and William Spencer & Son Corporation ("Spencer") for personal injuries sustained when caustic soda came into contact with plaintiff's right eye while he was employed by Erie as a barge captain. The suit against Erie is based upon both the Jones Act, 46 U.S.C. § 688, and the alleged unseaworthiness of the barge. The suit against Spencer is based solely upon negligence and, although on the admiralty side of the Court, was tried simultaneously with the action against Erie. Erie asserts a third party claim against Spencer for indemnity, alleging that Spencer is obligated to indemnify it for any amounts it may have to pay to plaintiff.[1] For reasons indicated below, I hold that plaintiff is entitled to a judgment of $35,000 against Erie, and Erie is entitled to judgment against Spencer. Based upon all the evidence and the Court's judgment of the credibility of the witnesses, the facts are as found below.

I

Plaintiff Ferguson was injured on March 19, 1958, while employed by Erie as barge captain of Erie Barge No. 363. The barge which was not self-propelled, was about ninety feet long, thirty feet wide, closed, made entirely of metal, and contained a cabin with a bunk. Ferguson had been employed aboard the barge for two or three years prior to the accident. Although plaintiff was "barge captain," there were no other seamen assigned to the barge. Plaintiff maintained log slips, checked freight, hung fenders, handled the lines and lights, cleaned the barge, and was ordinarily aboard when the vessel was towed from one point to another in the day time and occasionally aboard when it was towed at night. Ordinarily, Ferguson went home every night at 5:00 P.M. and reported to the barge every morning at 8:00 A.M.

On the day before the accident, plaintiff boarded the barge at Weehauken, New Jersey, where it took on about 570 drums of caustic soda in flake form. The drums, which weighed several hundred pounds apiece and were made out of a soft metal, were taken off railroad cars approximately forty or fifty feet away by Erie employees who then loaded the drums on the barge by means of two hi-los. These hi-los were equipped with a pushing mechanism, an accordian-like device which pushed off the four drums loaded on the platform at the front of the hi-lo. The drums had been loaded in a single tier in the railroad cars, but were placed on the barge in double tiers, with

1. Plaintiff originally sued Erie and Spencer in the same action. Erie cross-claimed against Spencer. Thereafter, plaintiff's claim against Spencer was dismissed because requisite diversity was lacking (order dated July 17, 1962). Erie then asserted its claim against Spencer as a third-party claim in the action brought against it by plaintiff. The order of July 17, 1962, dismissing plaintiff's claim against Spencer, was vacated and that action transferred to Admiralty (order dated January 14, 1963). For present purposes it is immaterial whether the claim is regarded as a cross-claim or a third-party claim, since the actions here are consolidated for trial.

no dunnage in between. Many of the drums that were loaded on the barge were badly dented. A few of the drums had loose tops when taken off the railroad cars, and they were set aside to be repaired, but it is not clear if the repairs were ultimately made or if these drums were loaded on the barge. In any event, when the loading was completed on March 18, there was no caustic soda on the deck of the barge. The barge, with Ferguson on board, was then towed to Pier 36 in Manhattan.

Employees of Spencer unloaded the barge on March 19. Spencer did this work pursuant to a written contract with Erie dated May 31, 1927. The unloading was done by knocking a drum on the top tier over on its side and then dropping it on to a pallet which was removed by a hi-lo. During the course of unloading the drums, a substantial quantity of caustic soda found its way to the deck of the barge, some of it because the tops of some drums came off. Spencer's employees first noticed the spillage of soda on the deck between the drums yet to be unloaded approximately one-half hour after the work began, but continued to unload. Those drums, some with holes in the side, from which soda was apparently leaking were moved by Spencer employees to a separate place on the deck, and the other drums were unloaded. Sixteen drums were so set aside, and a Spencer employee repaired them in the early afternoon of March 19, and these drums were then unloaded.

At about 2:15 P.M. on March 19, the unloading operation had been substantially completed. By this time, caustic soda covered a very substantial portion of the deck of the inside of the barge. Plaintiff, who normally cleaned the barge, started to remove the soda from the deck, using a shovel with ragged edges and an ordinary kitchen-type broom, both supplied by Erie. In the course of doing this on a deck whose surface contained small diamond-shape protuberances, the shovel caught and flipped a piece of caustic soda in plaintiff's right eye. Plaintiff felt pain immediately and ran off the barge to a medical office on Pier 36. His eye was washed out with water, and he contacted his employer. Thereafter, he went to a hospital in Jersey City, where he was treated by a doctor retained by Erie. He was admitted on March 19, and discharged on March 23, but was not able to return to work until April 28, 1958.

■ I find that, under the facts in this case, plaintiff is within the protection of the doctrine of seaworthiness and a seaman within the meaning of the Jones Act, 46 U.S.C. § 688, and is not covered by Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, as urged by Erie. Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 430 (1944); Usiak v. New York Tank Barge Co., 299 F.2d 808 (2 Cir. 1962); Weiss v. Central R. R., 235 F. 2d 309 (2 Cir. 1956); see Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958); Wilkes v. Mississippi River Sand & Gravel Co., 202 F.2d 383 (6 Cir.), cert. denied, 346 U.S. 817, 74 S.Ct. 29, 98 L. Ed. 34 (1953); but compare Wm. Spencer & Son Corp. v. Lowe, 152 F.2d 847 (2 Cir. 1945), cert. denied, 328 U.S. 837, 66 S.Ct. 1012, 90 L.Ed. 1613 (1946); American Lighterage Corp. v. Willard, 104 F.Supp. 241 (E.D.N.Y. 1952). Leading to the conclusion that plaintiff's job related to navigation are, among other things, his duties with respect to handling lines, lights, cleaning and keeping report sheets, and his length of servce aboard Barge No. 363.

■ Plaintiff's claim against Erie is based upon theories of unseaworthiness and negligence. A seaman is entitled to recovery from a shipowner for injuries caused by the unseaworthiness of a vessel, its appliances and equipment. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Mosley v. Cia. Mar. Adra, S.A., 314 F.2d 223, 227 (2 Cir.), cert. denied, 375 U.S. 829, 84 S. Ct. 73, 11 L.Ed.2d 61 (1963). A ship is unseaworthy, if it is not reasonably fit for its intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct.

926, 4 L.Ed.2d 941 (1960). A deck covered with caustic soda constitutes unseaworthiness. Cf. Torres v. Kastor, 227 F. 2d 664 (2 Cir. 1955). A shovel with frayed edges, which was used to clean up the deck of the barge which contained small diamond-shape protuberances, is unseaworthy equipment, because it is not reasonably fit for its intended use. The ship was also unseaworthy because failure to provide protective glasses to the captain to enable him to clean up this dangerous cargo rendered the barge less than reasonably fit for its intended use. Cf. Ezekiel v. Volusia S. S. Co., 297 F. 2d 215, 91 A.L.R.2d 1013 (2 Cir. 1961), cert. denied, Pinto v. States Marine Corp., 369 U.S. 843, 82 S.Ct. 874, 7 L. Ed.2d 847 (1962).

 A shipowner is negligent if it knew of, or should have known of, a dangerous condition which is reasonably likely to cause injury and does not exercise the care which a reasonably prudent man would have exercised under the circumstances. Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); cf. Ktistakis v. United Cross Nav. Corp., 316 F.2d 869 (2 Cir. 1963). I find Erie negligent because it knew or should have known that caustic soda in badly dented drums might leak and should have known that failure to provide protective glasses and a shovel in good order was likely to cause injury to a barge captain whose job it was to clean up the barge, when dangerous material, such as caustic soda, is involved.

 I find that the accident to plaintiff and his resultant injuries were proximately caused by the unseaworthiness of the vessel and Erie's negligence. I further find that there was no contributory negligence on the part of plaintiff. Plaintiff's duties included cleaning up the deck. It is the duty of the ship to provide plaintiff with proper equipment for doing his job, Street v. Isthmian Lines, Inc., 313 F.2d 35 (2 Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L.Ed.2d

53 (1963), and, under the circumstances, I do not find it negligent for plaintiff to have used the equipment with which he was provided.

 Plaintiff was thirty-four years old at the time of the accident; he is now forty. As a result of the contact of the caustic soda with his right eye, plaintiff suffered "industrial blindness," which means vision of 20/200 or worse. The vision in plaintiff's right eye is now 20/400 and is not correctable with eyeglasses. Among other things, plaintiff is left with scars on the cornea of his right eye obscuring the pupil, chronic conjunctival congestion, excessive lachrymation, a lowering of the right eye lid, which is a slight disfigurement, sensitivity to light with resultant frequent need to wear dark glasses, recurrent headaches, and generally reduced vision in the right eye, all of which are permanent in nature. In addition, plaintiff's left eye has apparently suffered deterioration in some respects, although not marked. There is some possibility that the left eye will further deteriorate as a result of the strain placed upon it because of the condition of the right eye. Plaintiff had no trouble with his eyes before the accident, and I find that the present condition of his eyes and his physical condition related thereto were proximately caused by the accident on March 19.

Prior to his injury, plaintiff was earning $84 a week as a barge captain and an average of $50 a weekend driving a taxi cab. While out of work from March 19, 1958 to April 28, 1958, plaintiff lost earnings from both sources of $753.60.[2] He continued to drive the taxi cab for approximately two years, but gave it up after an accident. I find that there is not sufficient evidence to justify any further award for loss of these earnings in the past or in the future. Plaintiff returned to his job as barge captain in April 1958, and has been performing his duties satisfactorily since that time.

2. Plaintiff lost five weeks and two days from work for a wage loss of $453.60. He was unable to drive his cab for six weekends losing $300.

There is not sufficient basis for an award for loss of these earnings in the future. The full amount claimed as the fair and reasonable value of the medical services incurred as a result of the accident is $338.90. Taking into account this sum and lost earnings of $753.60, the nature and extent of plaintiff's injuries, and his pain and suffering, I award plaintiff $35,000.

Because of the disposition of plaintiff's claim against Erie, it is unnecessary to deal with plaintiff's action against Spencer.

## II

Erie seeks indemnity from Spencer upon two theories. First, it relies on an indemnity agreement contained in the written contract between Erie and Spencer, under which Spencer performed its work. Second, it relies upon an alleged failure by Spencer to live up to its implied warranty of workmanlike service in doing its work of unloading the drums of caustic soda. See e. g., Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

Paragraph six of the agreement between Erie and Spencer reads, in part, as follows:

"1. The Contractor [Spencer] assumes all liability for loss or damage to property and injury to or death of persons (including workmen's compensation) of:

"(a) itself, its officers, agents or employees

(b) the Railroad, its officers, agents or employees

(c) all other persons or corporations, including the property being handled by the Contractor under this agreement and the Railroad's tools, machinery and equipment used by the Contractor for that purpose;

arising from any and all causes in connection with the handling of freight hereunder, and will indemnify the Railroad against any and all expense in connection therewith, except when such loss, damage, injury or death is due solely to the negligence of, or conditions created solely by the Railroad, its officers, agents or employees.

\* \* \* \* \* \*

"3. The Contractor will indemnify and save harmless the Railroad of and from any and all claims, demands, suits, costs, damages, judgments, fines or penalties, and any and all expenses, disbursements or costs incurred, or paid in connection therewith, or in connection with the handling or defense of such matters, arising from, connected with, or imposed or incurred as a result of the Contractor's failure to comply with and fulfill all of the terms, conditions and obligations or assume its full responsibility and liability, under this section or any other section of this Agreement."

The obligation of Spencer under this agreement to indemnify Erie for damages is clearly a broad one. Cf. Pierce v. Erie R.R. Co., 264 F.2d 136 (2 Cir. 1959). Under subparagraph 1, Spencer assumes all liability for damage to any employee of Erie "arising from any and all causes in connection with the handling of freight" except when the damage is "due solely to the negligence'" of Erie or "conditions" created solely by Erie. Therefore, the fact that Erie was negligent and that its negligence contributed to the accident to Ferguson does not bar it from recovering from Spencer as long as the injury was not due "solely" to Erie's negligence or to conditions created by Erie.

Upon completion of the loading on March 18, there was no caustic soda on the deck. It may be that by the time Spencer's men began to unload on March 19, there was some caustic soda on the decks around those drums which con-

tained leaks. However, it is quite clear that during the course of the unloading operation the amount of caustic soda on the deck and the extent of the area of the deck covered was substantially increased. It is also clear that Spencer at no time stopped work and attempted to have the caustic soda cleaned up either by its own men or by the barge captain. When the unloading was complete, Spencer's men left the barge, with caustic soda by this time strewn over a very large area of the deck. Under these circumstances, I hold that Spencer's conduct created a condition which contributed to the injury to Ferguson, and that the accident was not due solely to Erie's negligence or conditions created by Erie.

It may be argued that Spencer had no obligation to clean up the caustic soda itself, but that at most its duty was to stop work and have an Erie employee clean up. Caputo v. United States Lines Co., 311 F.2d 413, 415 (2 Cir.), cert. denied Imparato Stevedoring Corp. v. United States Lines Co., 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963); Drago v. A/S Inger, 305 F.2d 139, 142 (2 Cir.), cert. denied Daniels & Kennedy, Inc., v. A/S Inger, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962); De-Gioia v. United States Lines Co., 304 F. 2d 421, 424 (2 Cir. 1962). From this premise, it would be urged that since Ferguson would then have been the employee on the barge to clean up the soda, the accident would, in any event, have happened and that, therefore, Spencer's conduct is not a "cause" of Ferguson's injury. However, the indemnity agreement subjects Spencer to liability even for non-negligent conduct, so long as such conduct contributes to the accident. Cf. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732

(1964). There is no question that the activity of Spencer's men brought about the spillage onto the deck of a substantial amount of the caustic soda that would otherwise have stayed in the drums had they not been unloaded. Thus, Spencer itself was partially responsible for the condition which caused the accident. Therefore, within the meaning of the broad indemnity provision, I conclude that the presence of caustic soda on the deck which Ferguson cleaned up, and the injury to Ferguson, were not due solely to Erie's negligence or to conditions created solely by Erie. In addition, were this Court called upon to reach the question, it would be inclined to hold that there is an affirmative duty on Spencer to clean up itself (rather than just call the problem to the ship's attention) when the substance it unloads and spills on the deck is as inherently dangerous as caustic soda.

Therefore, under its contract with Erie, Spencer must reimburse Erie for whatever sums Erie has to pay to Ferguson.[3] It is not necessary to deal with Erie's second theory that Spencer breached its implied warranty of workmanlike conduct and the issue thus raised of whether an express indemnity provision precludes recovery on an implied warranty. See Pettus v. Grace Line, Inc., 305 F.2d 151 (2 Cir. 1962); Drago v. A/S Inger, supra; D'Agosta v. Royal Netherlands S.S. Co., 301 F.2d 105 (2 Cir. 1962); see also Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., supra (remanding issue to Court of Appeals).

This opinion incorporates the findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P. and by Admiralty Rule 46½. Settle order on notice in accordance with this opinion.

3. Erie also seeks reimbursement of costs and expenses, including legal fees. This is a proper item in Erie's claim. Paliaga v. Luckenbach S.S. Co., 301 F.2d 403, 408 (2 Cir. 1962). However, the issue of the amount of attorneys' fees and other miscellaneous expenses recoverable on the third-party claim was reserved for a further hearing if the parties fail to agree on the amounts involved.