608 F.2d 15
 Harold VARGAS, Plaintiff, Appellant,
v.
Robert C. McNAMARA, III, et al., Defendants, Appellees,
v.
SIDMAR ENTERPRISES, INC., Third-Party Defendant, Appellee.
Columbus BAKER, Plaintiff, Appellant,
v.
Robert C. McNAMARA, III, Defendant, Appellee,
v.
CAPE COD MARINE SERVICES, INC., et al., Third-Party
Defendants, Appellees.
Columbus BAKER, Plaintiff, Appellant,
v.
CAPE COD MARINE SERVICES, INC., Defendant, Third-Party
Plaintiff, Appellee,
v.
SIDMAR ENTERPRISES, INC., Third-Party Defendant, Appellee.
Columbus BAKER et al., Plaintiffs, Appellees,
v.
Robert C. McNAMARA, III,
and
Cape Cod Marine Services, Inc., Defendants, Appellants.
Columbus BAKER et al., Plaintiffs, Appellees,
v.
Robert C. McNAMARA, III, et al., Defendants, Appellees.
Sidmar Enterprises, Inc., Third-Party Defendant, Appellant.
 Nos. 79-1216 to 79-1220.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 13, 1979.
Decided Oct. 30, 1979.
 
 Harvey M. Forman, Boston, Mass., with whom Forman, Cohen & Forman, Boston, Mass., was on brief, for Harold Vargas and Columbus Baker.
 Lawrence B. Wernick, Boston, Mass., with whom Thomas D. Burns and Burns & Levinson, Boston, Mass., were on brief, for Cape Cod Marine Services, Inc.
 Carroll E. Ayers, Wakefield, Mass., with whom Curley, Ayers & Curley and John E. Sutherland, Wakefield, Mass., were on brief for Robert C. McNamara, III.
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 Plaintiffs appeal from the district court's granting of defendants' motions for directed verdict in this personal injury action.
 
 
 2
 From the evidence viewed in the light most favorable to plaintiffs, the following could be found. Plaintiffs Vargas and Baker were seamen employed by defendant McNamara[1] in contemplation of an upcoming fishing trip. Preliminary to the trip, they were to perform certain repairs on defendant's vessel, NORA. Vargas and McNamara brought the NORA from Provincetown to Falmouth, docking at the boat yard of defendant Cape Cod Marine Service where the repair work was to be done. McNamara instructed Vargas and Baker to clean the engine room and provided them with the equipment for the task which consisted of a spray gun with hose attachment, an unlabeled five gallon bucket of a cleaning agent known as Verisol, and a steam cleaner. Defendant McNamara had received this equipment from defendant Cape Cod Marine. Whether or not Cape Cod Marine provided any information to McNamara as to the type of cleaning component furnished or the precautions which should be followed in using it is unknown, plaintiffs having produced no evidence on this point.
 
 
 3
 In accordance with McNamara's instructions plaintiffs proceeded to spray an area of the engine room with Verisol, to scrape the grime, and then to apply the steam cleaner. They worked without a respirator or other equipment to offset any toxic fumes. Soon after commencing work, the engine room began to fill with steam, and plaintiffs experienced difficulty breathing and started coughing. Although they took frequent breaks in the fresh air, their symptoms worsened and other unpleasant sensations ensued. As a consequence of this experience, plaintiffs were disabled from working for a period of time.[2]
 
 
 4
 An assistant professor of occupational medicine testified that Verisol is a toxic industrial solvent which may have a harmful effect on the body according to the length and intensity of exposure. It is particularly hazardous to use in spray form because droplets of solvent are absorbed via the respiratory system if no respirator is worn.
 
 
 5
 Plaintiffs' complaints against both their employer and Cape Cod Marine were based solely on allegations of negligence. At the close of plaintiffs' evidence, defendants moved for a directed verdict. In allowing the motion, the district court observed that there was no evidence either defendant knew or should have known the toxic qualities of Verisol or the circumstances under which it should be used, nor was there evidence that Cape Cod Marine either furnished incorrect information or failed to pass along information in its possession; consequently, the district court concluded plaintiffs had failed to establish a prima facie case. The court then raised the issue of unseaworthiness itself, although the matter had not been pleaded, and invited arguments from the parties on the subject. While poorly articulating any coherent theory of unseaworthiness, plaintiffs did request leave to amend their complaints to add a count therefor. The court responded that even were the complaints so amended the directed verdicts would be granted because unseaworthiness had not been established by the evidence. Plaintiffs construe the court's ruling as a denial of their motion to amend and now argue that the court erred in denying that motion and in directing verdicts for both defendants on the negligence counts.
 
 
 6
 Fed.R.Civ.P. 15(a)[3] provides that "leave (to amend) shall be freely given when justice so requires." The motion to amend ordinarily should not be denied "(i)n the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, Futility of amendment, etc. . . . (Emphasis added)." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Here, the reason given for denying the amendment was futility, a valid reason in general, but, we think, incorrect in the circumstances of this case.[4]
 
 
 7
 There was, in fact, sufficient evidence from which a factfinder could conclude the vessel was unseaworthy. Unseaworthiness may arise from the employment of an unsafe method of work such as the shipowner's failure to provide adequate equipment for the performance of an assigned task or necessary safety equipment. Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 327, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960) (vessel has duty to furnish seamen with tools reasonably fit for their intended use); See Webb v. Dresser Industries, 536 F.2d 603 (5th Cir. 1976), Cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977) (failure to provide proper foot apparel for ice and snow conditions to seaman ordered ashore to pick up supplies); White v. Rimrock Tidelands, Inc., 414 F.2d 1336, 1339 (5th Cir. 1969) (absence of adequate safety equipment rubber boots); Ferguson v. Erie Railroad Co., 235 F.Supp. 72, 76 (S.D.N.Y.1964) (ship unseaworthy because of failure to provide protective glasses); 1B Benedict Admiralty § 24, pp. 3-74 to 3-81 (7th ed. 1976). Here, the factfinder could conclude that the procedure McNamara directed for cleaning the engine room was unsafe. There was evidence that the use of Verisol in spray form increased plaintiffs' exposure to its toxic fumes. Whether a toxic solvent in spray form should have been utilized at all in the poorly ventilated room is debatable, but at the very least, or so a factfinder could permissibly conclude, protective masks should have been provided. That McNamara did not know, or in the exercise of reasonable care would not necessarily have known, that the modus operandi he prescribed was unsafe or that protective masks were required, is irrelevant, for liability under unseaworthiness principles is not dependent upon fault. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).
 
 
 8
 While the reason stated for denial of plaintiffs' motion to amend was therefore erroneous, it does not follow that the motion should be granted. In Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15 (1st Cir. 1979), we stated that where a considerable period of time passes between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay. There, movant's proffered reason for delay developments in the law applicable to his case was unsupported. Id., at 20. Furthermore, defendants would have suffered some prejudice had the amendment been allowed, for discovery had apparently already been completed by the time movant sought to add both a new defendant and additional allegations against the original defendant. We concluded that given movant's failure to excuse his delay, we could not describe this prejudice as insignificant. Defendants here argue they are faced with even greater prejudice discovery proceeded and was completed and cross-examination was conducted on the basis that this was solely a negligence case. Furthermore, plaintiffs have offered no excuse other than inadvertence for leaving out an unseaworthiness count, nor did they present the district court with a single legal citation which could have shown the court that an amendment might put them in a position to prevail on that theory. It is the duty of an attorney to research the law and to present the court with citations to controlling legal authority. See ABA Code of Professional Responsibility, Canon 7, EC 7-23. No court, no matter how capable and knowledgeable, can possibly keep in the front of its mind every precedent and statute in the myriad specialized areas of the law.
 
 
 9
 In the circumstances, we think the case must go back to the district court for redetermination of the motion to amend. If the court is satisfied that, notwithstanding the fact that inclusion of a seaworthiness count would not be futile, the interests of justice do not support granting permission to amend, it may continue to deny the motion. If, on the other hand, it concludes that providing a trial on unseaworthiness at this late date is in the interest of justice and not unduly prejudicial to defendants, it may allow the motion. A factor the court may wish to take into account is that plaintiffs' pretrial memoranda and interrogatories made some, albeit brief, reference to alleged unseaworthiness; on the other hand, the omission of a seaworthiness count naturally led defendants to expect that the matter was not in issue. Attention should also be paid to the costs to the taxpayers, the courts, other litigants and our legal system generally of proceeding with a matter which has been so unnecessarily prolonged because of counsel's failure not only to plead unseaworthiness but to research the basic legal authorities relevant to plaintiffs' claim.
 
 
 10
 Nonetheless, while tempted simply to affirm the court's disposition of the matter, we shall vacate and remand in view of the court's incorrect (if understandably so) basis for ruling, leaving it to the discretion of the district court whether to stand by its original action.
 
 
 11
 The directed verdict for McNamara on the Jones Act negligence count is entirely proper. There is simply no evidence that McNamara knew or should have known the toxic qualities of Verisol. Just as an employer-shipowner who furnishes a defective tool to a seaman subsequently injured thereby would not be liable under the Jones Act if the defect could not have been discovered in the exercise of reasonable care (though he would be liable under the doctrine of unseaworthiness) so too McNamara could not have been found negligent on the present record which disclosed no reason why he should have suspected the method employed in cleaning the engine room would prove injurious to plaintiffs. See Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 327-28, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960) (discussing the difference between Jones Act negligence and unseaworthiness).
 
 
 12
 Plaintiffs cited Del Raso v. Elgin, Joliet & Eastern Railway Co., 84 Ill.App.2d 344, 228 N.E.2d 470 (1967), Cert. denied, 390 U.S. 948, 88 S.Ct. 1036, 19 L.Ed.2d 1138 (1968), for the proposition that an employer is presumed to know the nature of the materials it places in its employees' hands. In that case, however, the employees had complained to their employer of noxious fumes, but only three months later did the employer provide protective masks. In the face of the complaints, the employer had knowledge from which to conclude that the employees were being subjected to a hazard. Id. 228 N.E.2d at 477-78. Here, in contrast, plaintiffs did not complain to McNamara until their task was substantially completed.[5] Nor are plaintiffs aided by Taylor v. Newcomb Baking Co., 317 Mass. 609, 59 N.E.2d 293 (1945), a case decided under common law negligence principles, for the evidentiary predicates to the employer's liability there prior experience with the irritant and expert testimony of the common knowledge in the trade and protective practices utilized therein are missing here.
 
 
 13
 Plaintiffs' action against Cape Cod Marine is premised on common law negligence.[6] Neither the Jones Act nor the doctrine of unseaworthiness applies to Cape Cod and plaintiffs do not contend the contrary.
 
 
 14
 There is no evidence whether or not Cape Cod knew the composition of Verisol or its potential hazard when used in spray form in a poorly ventilated area. Whether a supplier of a product (Cape Cod) who is not the manufacturer has any duty to know the properties of the product it furnishes and to warn of them is a question we do not reach because even if Cape Cod had such a duty there is no evidence it was violated. The evidence is that McNamara, not plaintiffs,[7] obtained the Verisol and spray equipment from Cape Cod, but as McNamara was not called as a witness, there is no indication whether or not Cape Cod provided any information or warnings to him. The fact that McNamara did not tell plaintiffs to take any particular safety measures does not permit the inference that Cape Cod failed to provide information to him from which a reasonable person would conclude that precautions, perhaps in terms of ventilation, should be followed while using the product. Plaintiffs have failed to state a prima facie case with respect to Cape Cod.
 
 
 15
 A procedural point remains. The directed verdicts were granted on January 31, 1979, and judgments entered for defendants on February 14, 1979. Plaintiffs' March 1, 1979 notices of appeal were worded to appeal not from the judgments of February 14, 1979 as they should have been, but from the directed verdicts. On March 14, 1979 plaintiffs moved to correct their mistake by amending their notices of appeal. The motions were allowed on March 23, 1979, and plaintiffs filed their amended notices of appeal on that date. Defendants appeal from the denial of their motions to strike plaintiffs' purported notices of appeal and to dismiss the purported appeals and from the allowance of plaintiffs' motions to amend their notices of appeal. While plaintiffs made a technical error in their notices of appeal, there was never any doubt as to the subject matter of the appeal. It is contrary to the Federal Rules of Civil Procedure to defeat consideration on the merits because of such technicalities, See Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); accordingly, we consider plaintiffs' appeals to be properly before us.
 
 
 16
 We vacate the judgment in favor of defendant McNamara and remand for reconsideration of the court's ruling on plaintiffs' oral motion to amend by adding an unseaworthiness count. If amendment is allowed, the case may proceed to trial solely on the basis of unseaworthiness.[8]
 
 
 17
 The judgment is affirmed as respects Cape Cod Marine. In respect to defendant McNamara, so much of the judgment is affirmed as directs a verdict in his favor on the existing complaints. The judgment denying the motion to amend is vacated and the case remanded for further proceedings in accordance herewith.
 
 
 18
 So ordered.
 
 
 
 [1]
 Plaintiffs' actions against their employer, McNamara, were based on Jones Act negligence
 
 
 [2]
 We emphasize that this description of the evidence is in the light most favorable to plaintiffs. We do not say that a factfinder would be obliged to reach these conclusions
 
 
 [3]
 We do not view this case as being within the purview of Fed.R.Civ.P. 15(b), amendments to conform to the evidence, because the issue of unseaworthiness cannot be said to have been tried "by express or implied consent of the parties." The introduction, without objection, of evidence on the negligence issue which also incidentally bore on unseaworthiness would not constitute an express or implied consent to try the latter. Gallon v. Lloyd-Thomas Co., 264 F.2d 821, 825 n.3 (8th Cir. 1959); Otness v. United States, 23 F.R.D. 279, 280 (D.C.Alaska 1959); 3 Moore's Federal Practice P 15.13(2), pp. 15-171 to 172 (2d ed. 1948)
 
 
 [4]
 We hasten to add that the plaintiffs failed to present proper support for any seaworthiness argument, just as earlier they failed to plead the matter. See infra
 
 
 [5]
 Additionally, plaintiffs point to two state "Safety Orders Applicable to Longshore and Waterfront Operations," Mass.Gen.Laws c. 149, §§ 18A, 18B. Whatever duties, if any, are imposed upon employers by these statutes, we do not decide whether these state provisions are relevant in determining whether the Jones Act, a federal statute, has been violated for plaintiffs did not bring the provisions to the attention of the district court. Dobb v. Baker, 505 F.2d 1041, 1044-45 (1st Cir. 1974)
 
 
 [6]
 Jurisdiction is based on diversity of citizenship. While allegations in the complaint are stated in terms of diversity of residence rather than citizenship, there was evidence from which the latter can be established, and we treat the complaint as amended to conform to the proof in that regard. Neagle v. Johnson, 381 F.2d 9 (8th Cir. 1967); National Farmers Union Property & Casualty Co. v. Fisher, 284 F.2d 421 (8th Cir. 1960). See also Baer v. United Services Automobile Association, 503 F.2d 393, 397 (2d Cir. 1974) (dicta)
 
 
 [7]
 Plaintiffs had little, if any, contact with Cape Cod directly. There was some indication Cape Cod employees may have assisted plaintiffs with the work they performed on the morning of January 3, 1974 (the date of the incident), removing the engine from the vessel, but no Cape Cod employee participated in the afternoon work, cleaning the engine room with Verisol
 
 
 [8]
 We have not considered whether, with the Jones Act count eliminated, plaintiffs would be entitled to a jury trial