## BYRD v. ATLANTIC COAST LINE R. CO.

(Circuit Court of Appeals, Fourth Circuit. November 10, 1924.)

### No. 2273.

Railroads ⬅➡350(13)—Gross or willful negligence of deceased at crossing held questions for jury.

Plaintiff's testator was driving an automobile on a highway which crossed the tracks of defendant's railroad, which was there double-track, at a station. He stopped to wait the passing of a freight train which was shifting a car on the nearer track, crossed immediately behind it, and drove upon the other track, where he was struck and killed by a train from the other direction which the first train prevented him from seeing. The testimony was

conflicting as to whether the train gave the crossing signals required by Civ. Code S. C. 1922, § 4903, which made that question one for the jury. Nearly all the railroads in that part of the country were single-track, and it did not appear that decedent knew that defendant's road for a few miles had a double track. *Held* that, in view of such fact, he could not be held. as matter of law, chargeable with "gross or willful" negligence which under section 4925 of the statute would defeat a recovery.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Florence; Ernest F. Cochran, Judge.

Action at law by Alva H. Byrd, executor of the will of Huger S. Byrd, deceased, against the Atlantic Coast Line Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

James R. Coggeshall, of Darlington, S. C., and Mendell L. Smith, of Camden, S. C., for plaintiff in error.

F. L. Willcox, of Florence, S. C., for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. Huger S. Byrd was killed by a freight train on the Atlantic Coast Line Railroad while driving his automobile across the railroad at Mars Bluff Station. In this action by his executor to recover damages for his death the district judge directed a verdict for the defendant on the ground that the evidence was conclusive of gross negligence by the deceased in attempting to cross the track. The applicable South Carolina statutes are as follows:

"Sec. 4903. A bell of at least thirty pounds weight and a steam or air whistle shall be placed on each locomotive engine or interurban car, and such bell shall be rung or such whistle sounded by the engineer or fireman or motorman at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place, and be kept ringing or whistling until the engine or interurban car has crossed such highway or street or traveled place. * * *

"Sec. 4925. If a person is injured in his person or property by collision with the engines or any car or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, as provided in the preceding section, unless it is shown that in addition to a mere want of ordinary care the person injured, or the person having charge of his person or property, was at the time of the collision guilty of gross or willful negligence, or was acting in violation of the law, and that such gross willful negligence or unlawful act contributed to the injury." Civ. Code 1922.

At the station where Byrd was killed the double main line tracks run east and west, crossing at right angles the public road. When Byrd in his automobile approached the crossing from the north about 7:45 a. m. on August 11, 1917, he found the north track blocked by a freight train bound west engaged in shifting a car. He stopped his car, got out, and inquired of a brakeman when the train would move out of his way. After being told it would clear the crossing in a few minutes, he got into his car and moved up within a few feet of the train with his motor running. Just as soon as the cars on the track cleared the crossing he drove across the first track. As he reached the southern track his car was struck by another freight train running east. He took no precaution whatever before attempting to drive across the second track.

Evidently the blocking of the first track, assuming it to be beyond the legal period, had no causal connection with the accident. The obstruction of one track gave no suggestion that another train might not come on the other main line parallel track.

Nor did the presence of the houses near enough to the track to obstruct the view contribute in any way to the accident, for the real and complete obstruction to Byrd's view was the train which was passing him. It was perfectly obvious to him, sitting in his car within a few feet of the passing train, that he could not see another train approaching on the other track from the opposite direction.

The argument is without foundation that fault should be imputed to the conductor and brakeman on the passing train in failing to give the deceased such warning of the approaching train as would have prevented him from attempting to cross the other track. The conductor's testimony was undisputed that as soon as he was made aware of the approach of the other train by hearing its signal, he rushed to the rear of the cab and by shouting and gestures tried to warn Byrd not to go on the track. He could do no more. When the brakeman

heard the other train approaching and saw Byrd attempting to cross, he was on the top of a car midway of the train, too far to communicate with him.

. The engineer and fireman of the approaching east-bound train testified that the required statutory signal was given. Their testimony is corroborated not only by that of the conductor, engineer, and brakeman of the west-bound train, but by the testimony of the conductor that his effort to warn Byrd was prompted by hearing the whistle of the approaching train. Yet there was testimony given by bystanders that they did not hear the signal, and were not aware of the train's approach. This conflicting evidence makes a question for the jury on the issue whether the statutory signal was given. Therefore, in considering whether a verdict should have been directed, the assumption must be that it was not given.

The question, therefore, is whether the evidence showed that the defendant was guilty of gross contributory negligence in attempting to cross the track without taking any precaution. We have recently stated, after full consideration, the general rule that there can be no recovery on behalf of a traveler on the highway killed or injured at a crossing by a passing train when, without excuse, he takes no precaution for his safety. Southern Railway Co. v. Priester (C. C. A.) 289 F. 945. The South Carolina cases were there cited, showing that the same rule was applied in that state under the South Carolina statute. The enforcement of this rule becomes more important because collisions with heavy motor cars endanger the lives of passengers and crew of the railroad trains as well as the occupants of automobiles. Drivers of automobiles therefore owe the duty of care and precaution before crossing railroad tracks, not only to themselves but to all persons on trains and to the railroad companies as owners of the trains.

The circumstances which may excuse the traveler from taking precautions to look and listen for his own safety are thus well stated by Mr. Justice Marion in Chisholm v. Seaboard Air Line Railway, 121 S. C. 394, 114 S. E. 503:

"The facts and conditions which may qualify the duty and excuse the failure to look and listen within the foregoing rules are usually: First, where looking and listening would not have availed to avert the injury; second, where the traveler enters upon the track under an express or implied assurance of safety, as where gates are open

or signals are given by watchmen; third, the presence of some imminent danger or emergency, not brought about by the traveler's own negligence; fourth, the presence and influence of unusual or extraordinary conditions, not created or controlled by the traveler himself, and especially where such conditions are brought about by the railway company, which are sufficient to distract and divert the attention of a man of ordinary prudence and self-possession from the duty of looking and listening effectively for an approaching train."

Obviously, the three first-mentioned conditions which may excuse the traveler did not exist in the case before us. Were there any circumstances or conditions calculated to divert the attention of Byrd from the duties of taking some precaution before crossing the second track?

We think the jury might have inferred that there was one which may possibly have so operated. As everybody knows, nearly all railroad lines in the country where Byrd lived and did business were single-track. It is true he lived in the same general region where the Atlantic Coast Line Railroad had maintained for about 12 years a double track from Florence, passing Mars Bluff, to Peedee River bridge, and the probability may be that he had crossed it. But there was no proof that he had, and none that he knew in any other way he was about to cross a second main line track. Of course, he saw the track in front of him, but if he mistook it for a side track we think it was for the jury to say whether it was gross or willful negligence for him to go on it without looking to see if a train was running on the siding at the same time another freight train was leaving the station.

Being of the opinion that under the evidence this issue should have been submitted to the jury, the judgment must be reversed.