Clarence S. WESTLEY, Appellant,

v.

SOUTHERN RAILWAY CO., Appellee.

No. 7505.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 13, 1957.

Decided Nov. 26, 1957.

J. D. Todd, Jr., Greenville, S. C. (Wesley M. Walker, Fletcher C. Mann and

Leatherwood, Walker, Todd & Mann, Greenville, S. C., on brief), for appellant.

F. D. Rainey, Greenville, S. C. (Frank G. Tompkins, Jr., Columbia, S. C., J. Wright Horton, and Rainey, Fant, Brawley & Horton, Greenville, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

SOBELOFF, Circuit Judge.

■ Clarence S. Westley brought suit in the District Court for the Western District of South Carolina against the Southern Railway Company for injuries sustained when the automobile he was driving struck the side of the locomotive of the defendant's train. The case was tried before the District Judge sitting without a jury, who, at the conclusion of all the evidence, and after having viewed the scene of the accident, made the following finding of fact:

"Considering the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, I find that the plaintiff was guilty of gross contributory negligence as the proximate cause of his injuries as a matter of law."

If this case had been heard before a jury, an instruction that the plaintiff was guilty of contributory negligence as a matter of law might have been open to challenge on the ground that the facts and the inferences therefrom most favorable to the plaintiff would support a verdict in his favor and that, therefore, the issue should have been submitted to the jury. Here, however, the judge himself was the fact finder, and he distinctly found that the proximate cause of the plaintiff's misfortune was his own gross contributory negligence. When the

judge added the words "as a matter of law," he was merely asserting that, in his opinion, no reasonable person could come to a contrary conclusion on the facts. The addition of the phrase did not, in the circumstances of this case, convert the finding of fact into a legal ruling.

■ Accordingly, the issue in this instance is not whether reasonable men might disagree as to the existence of gross contributory negligence. If the case had been submitted to a jury and it had found for the defendant, we should be obliged to uphold the resulting judgment if there was any evidence legally sufficient to support the verdict. The case having been tried by a judge without a jury, his finding is reviewable on appeal, but may not be set aside unless clearly erroneous, giving due regard to his opportunity to judge the credibility of the witnesses. Applying this test, there is ample support for the finding.

■ Undoubtedly, our task would have been lightened had the judge, sitting as a jury, made more specific findings of fact, as the rule requires when there is a final adjudication on the merits. Fed. Rules Civ.Proc. rules 41(b), 52(a), 28 U.S.C.A. Generally, it is important to observe this requirement, for otherwise the appellate court may not know the elements that entered into the judge's decision. As we have held previously, however, detailed findings are not a jurisdictional prerequisite and, having examined the record, we will exercise our power of review in this case. United States v. Pendergrast, 4 Cir., 1957, 241 F.2d 687, 689.[1]

The record discloses that about 5:45 on the morning of March 2, 1956, Westley, a serviceman, drove his automobile in an easterly direction along the White Horse Road on the way from his home near Greenville to his place of duty at

[1] Compare City of Sumter v. Spur Distributing Co., 4 Cir., 1940, 110 F.2d 649, where we did not feel that the facts had been sufficiently found to enable us to pass upon the questions involved, and we reversed and remanded the case for further findings in accordance with the requirement of rule 52(a). See, also, United States v. Cunningham, 4 Cir., 1957, 246 F.2d 330, 333; Kweskin v. Finkelstein, 7 Cir., 1955, 223 F.2d 677.

Donaldson Air Force Base. It was raining, the wind was blowing at about twelve miles per hour, and it was dark. It is not disputed that his automobile windows were closed, and that in addition to the motor, the heater, defroster, and windshield wiper were in operation, and the radio was playing.

Concededly, there was no blinker light or flagman at the crossing when the collision happened. The plaintiff, however, was not unfamiliar with the locality, and he was aware that he was approaching the track. He testified that he removed his foot from the accelerator when he saw the first railroad warning sign, which was said to be three hundred and twelve feet from the crossing. He also admitted seeing the cross arm sign sixty-two feet ahead of the railroad crossing. He had never seen a train on these tracks at such an early hour of the morning, and there was testimony that the train with which he collided was about twenty-five minutes behind schedule. It was a passenger train consisting, in addition to the locomotive, of an express car, a combination mail and baggage car, a daycoach, and a partially lighted pullman.

Although the plaintiff denies hearing the train's approach, there was testimony of a passenger in an automobile approaching the tracks from the opposite direction that a whistle was blown when the train was within three hundred to four hundred feet of the intersection. The train's engineer claimed that the bell was ringing and that the whistle was "blowing continuous," having been activated automatically as the train approached the crossing. His testimony is silent as to the exact point at which the whistle and bell were sounded.

The plaintiff's explanation of his failure to see the train's headlights as it approached the intersection was that there there was a curve in the track, that the highway and the railroad cross at an acute (forty-five-degree) angle, and that there were other obstructions, particularly a sloping embankment and a fruit stand situated one hundred and six-teen feet north of the crossing and eighteen and one-half feet from the tracks, but having dimensions of only twenty feet in width, fourteen feet in length, and eight feet in height. He suggested that if he had seen the train's lights, they would have looked like those of the service station nearby. He also testified that the bright lights of an approaching westbound automobile, seventy-five feet from the crossing, bothered him and interfered with his vision, and therefore he dimmed his lights. Nevertheless, he acknowledged that he did not stop, since he heard no noise but that of the rain.

There was testimony from which it could reasonably be found, to the contrary of the plaintiff's claim, that he had ample opportunity to see the train at a sufficient distance ahead of the crossing in time to have averted the accident if he had looked. Plaintiff asserted that he looked up and down the tracks when he was three hundred feet from them, again when he was one hundred feet away, and still another time when he was forty feet from the tracks, but saw no approaching train. A civil engineer offered as a witness on behalf of the plaintiff testified, however, that when the plaintiff got within one hundred feet of the crossing, he had a completely unobstructed view in the direction of the approaching train for at least one hundred feet; and, when fifty feet from the tracks, his view was unobstructed for at least one hundred and thirty feet.

Plaintiff testified that at the moderate speed he was then going (about twenty-five miles per hour), he could have stopped within forty-five feet. He also testified that he first saw the train when the engine passed between him and the traffic light situated at a highway intersection about one hundred and twenty feet beyond the railroad crossing. At that time, plaintiff said, he was approximately twenty feet from the tracks. He then swung sharply to the right to avoid the train but collided with the right side of the locomotive, the point of contact being midway the length of the fifty-foot engine. The automobile was pitched against a tele-

graph pole and the plaintiff was thrown into a ditch. The resulting injuries necessitated amputation of his right leg above the knee.

Unquestionably, there was evidence from which the trier of facts could have concluded that the defendant failed in its duty to give warning, by bell or whistle, of the train's approach, at least five hundred yards before it reached the crossing.[2] If such were the finding, and this failure was a proximate contributing cause of the injury, the plaintiff would not be barred from recovery unless his own conduct amounted to gross or wilful negligence contributing to the injuries.[3]

Whether or not one shares the District Judge's view that the circumstances *compel* a finding of gross contributory negligence, it is not to be doubted that they *permit* such a finding by the tribunal chosen by the parties. See: Mock v. Atlantic Coast Line Railroad Company, 1955, 227 S.C. 245, 87 S.E.2d 830; Carter v. Atlantic Coast Line Railroad Company, 1940, 192 S.C. 441, 7 S.E. 2d 163; Cook v. Atlantic Coast Line Railroad Company, 1941, 196 S.C. 230, 13 S.E. 2d 1, 133 A.L.R. 1144; Byrd v. Atlantic Coast Line Railroad Company, 4 Cir., 1924, 2 F.2d 672; Robison v. Atlantic Coast Line R. Co., 1936, 179 S.C. 493, 184 S.E. 96; Breeden v. Rockingham R. Co., 1940, 193 S.C. 220, 8 S.E.2d 366; Atlantic Coast Line R. Co. v. Glenn, 4 Cir., 1952, 198 F.2d 232; Taylor v. Atlantic Coast Line R. Co., 1950, 217 S.C. 435, 60

S.E.2d 889; Carter v. Peace, 1956, 229 S.C. 346, 93 S.E.2d 113.

The verdict is at least rationally supported in the evidence, and we cannot say that the Judge's appraisal was clearly erroneous.

The judgment must be

Affirmed.

---

2. 5 Code of Laws of South Carolina (1952), Sec. 58–743, provides:

"A bell of at least thirty pounds weight and a steam or air whistle shall be placed on each locomotive engine or interurban car and such bell shall be rung or such whistle sounded by the engineer, fireman or motorman at the distance of at least five hundred yards from the place where the railroad crosses any public highway, street or traveled place and be kept ringing or whistling until the engine or interurban car has crossed such highway, street or traveled place."

3. Ibid, Sec. 58–1004:

"If a person is injured in his person or property by collision with the engine or any car of a railroad corporation at a crossing and it appears that the corporation neglected to give the signals required by the General Railroad Law and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision or to a fine recoverable by indictment, unless it is shown that in addition to a mere want of ordinary care the person injured or the person having charge of his person or property was at the time of the collision guilty of gross or wilful negligence or was acting in violation of the law and that such gross or wilful negligence or unlawful act contributed to the injury."