George EZEKIEL, Plaintiff-Appellant,

v.

VOLUSIA STEAMSHIP CO. and Suwanee Steamship Co., Defendants-Appellees.

No. 44, Docket 26937.

United States Court of Appeals Second Circuit.

Argued Oct. 31, 1961.

Decided Dec. 15, 1961.

Theodore H. Friedman, Jacob Rassner, New York City, for plaintiff-appellant.

Arthur M. Boal, Jr., Boal, McQuade & Fitzpatrick, New York City, for defendants-appellees.

Before CLARK, HINCKS and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Plaintiff, a Honduran seaman, brought this action in 1957, in the District Court for the Southern District of New York, against a Liberian corporation [1] for an injury to his eye suffered while he was chipping rust aboard M/V Arctic Reefer, a Liberian vessel, in Guatemalan waters. The action was brought on the "law" side, and a jury trial was demanded. In the spring of 1961, plaintiff consented to a transfer to the "admiralty" side, withdrew the claims asserted for maintenance and cure and for negligence under the Jones Act, 46 U.S.C.A. § 688, and agreed to proceed solely on a theory of unsea-

[1]. Claims against defendant Suwanee SS. Co. were discontinued.

worthiness. It was stipulated that liability was governed by Liberian law and that Liberia has adopted the nonstatutory general maritime law of the United States.

Plaintiff's evidence on the issue of liability consisted of his own deposition and the testimony of a Captain Mandrill, called as an expert. Shortly after 8 A.M. on May 19, 1956, plaintiff began to chip rust, with a hammer, from a blower on top of the deck above the engine room. About an hour later a piece of rust flew off and hit his right eye. He was not wearing goggles. He claimed that he had none, that the boatswain kept them, that he had asked the boatswain for some before starting work, and that the boatswain claimed to have no more. He was unable to recall the name of the boatswain, although he had been on the ship for almost a year. Mandrill testified it was bad practice for a boatswain to allow a seaman to chip rust without wearing goggles.

Defendant introduced the deposition of Bodden, the Arctic Reefer's chief officer. His testimony was that each of the seven members of the deck crew, including Ezekiel, had been issued a pair of goggles in March and had been informed that if "at any time the goggles should be lost or injured it was their duty to report in order for replacement of a new pair"; that a notice was posted to this effect, stating also that replacements were to be obtained from the chief officer; that, pursuant to a written order from the company, he kept six spare sets of goggles in a locker in his office; that it was the custom on the ship for men to come to him for supplies so maintained; but that Ezekiel had never sought a replacement for his goggles. Bodden testified also that, on two previous occasions, one about a month and the other about a week before the injury, he saw Ezekiel chipping rust with goggles around the neck but not on the eyes, and remonstrated about this; Ezekiel promised to be careful on the first occasion and made no answer on the second. After the accident Bodden asked Ezekiel whether he had his goggles on; Ezekiel answered "No." Bodden asked why, but got no reply.

In giving judgment for the defendant, Judge Holland found, in an opinion delivered at the close of the trial, "that goggles for the prevention of injuries to the eye to be used by a crew member in the chipping of rust were a part of the maintenance of the vessel in question required by the standard of seaworthiness," "that in connection with the performance of a chipping of rust operation, seaworthiness requires the making of goggles available to the crew member who is ordered to perform such an operation," and "that the evidence in the case demonstrates that both of those duties which I have outlined heretofore as to seaworthiness have been met by the respondent." The judge declined a request by plaintiff's counsel to consider more detailed findings and conclusions which counsel wished to prepare.

 Reading the findings together as we must, the last quoted finding means at least that the judge had determined, as he was amply warranted in doing, that goggles had been issued to plaintiff, that plaintiff had been instructed to come to the chief officer for a replacement if they were lost or damaged, and that replacements were available. It could mean also that the judge completely discredited plaintiff's story about the unsuccessful request to the anonymous boatswain, or even that the judge thought plaintiff had the goggles with him but failed to put them on, as, according to Bodden, he had failed twice before. The judge would have been entitled to come to any of these conclusions although plaintiff was not before him, in view of the contradictions between plaintiff's and Bodden's versions of the goggle situation, see Nolan v. Buffalo Ins. Co., 181 F.2d 735, 738 (8 Cir., 1950). Even if the judge did not intend any finding on the truth of plaintiff's story, we could supplement his findings by ourselves weighing plaintiff's testimony against Bodden's; indeed, we could do this even if this appeal were one governed by the Federal Rules of Civil

Procedure rather than by the Admiralty Rules, 28 U.S.C.A., see Westley v. Southern Ry., 250 F.2d 188 (4 Cir., 1957); Burman v. Lenkin Const. Co., 80 U.S. App.D.C. 125, 149 F.2d 827 (1945); cf. 5 Moore, Federal Practice (1951), § 52.04. However, it is unnecessary for us to supply such additional findings or to remand to the district judge, since even without them the judgment must be affirmed.

At the outset, it is clear that a ship is not rendered unseaworthy simply because rust accumulates and has to be removed, see Lind v. American Trading & Production Corp., 294 F.2d 342 (9 Cir., 1961). Nothing was shown to be wrong in the quantity or quality of the ship's gear; we have already noted that the judge's findings, supported by the evidence, mean at least that goggles had been issued and that an adequate number of spares were maintained and were available to the crew for proper purposes. The evidence did not require a finding of a deficiency in the ship's procedure with respect to the use of goggles; the judge was not bound to accept the opinion of plaintiff's expert that good procedure requires that boatswains take affirmative action to see to it that crewmen, who have been furnished goggles and instructed to wear them, do so at all times. Even if plaintiff's testimony were to be taken at face value, it did not compel the judge to find that the single alleged misfeasance by the boatswain made him not "equal in disposition and seamanship to the ordinary men in the calling." Keen v. Overseas Tankship Corp., 194 F.2d 515, 518 (2 Cir.), cert. denied, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952); Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 94 L.Ed. 354 (1955). The only remaining basis of liability would be the boatswain's alleged action standing by itself. But we have just reaffirmed, without disagreement on that point, that allegedly imprudent action by a seaman's superior is not within the concept of unseaworthiness even though it may be within that of negligence, Pinto v. States Marine

Corporation of Delaware, 296 F.2d 1 (2 Cir., 1961), petitions for rehearing and rehearing *in banc* denied, Nov. 20, 1961, as was held long ago in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), and Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L. Ed. 1171 (1918), and recently in Imperial Oil, Ltd. v. Drlik, 234 F.2d 4 (6 Cir., 1956); Penedo Cia Naviera S.A. v. Maniatis, 262 F.2d 284 (4 Cir., 1959); and Lind v. American Trading & Production Corp., supra; see Gilmore & Black, The Law of Admiralty (1957), 320 and Judge Learned Hand's discussion in Grillea v. United States, 232 F.2d 919, 922 (2 Cir., 1956). Liberia has chosen not to adopt United States statutory law making negligence as well as unseaworthiness a ground for recovery; it is not for us to force that upon her. Since the judge below found the claim of unseaworthiness not proved, there was of course no occasion for him to make findings on the issue of contributory negligence or to apportion damages, as would have been required in the event of a contrary conclusion as to unseaworthiness.

Affirmed.

CLARK, Circuit Judge (dissenting).

The undisputed testimony established that plaintiff, an 18-year-old seaman, was chipping rust with a hammer from a blower on the ship's deck; that he was not wearing goggles; and that as a result of this failure a piece of rust hit his right eye. Plaintiff's expert witness, Captain Mandrill, testified that chipping is "hazardous" and that the wearing of goggles is necessary in such an operation. He further stated that a good boatswain who observed a man chipping rust without goggles would make him put them on. At trial, Judge Holland found that a ship must provide crew members chipping rust with "goggles for the prevention of injuries to the eye" in order to meet the standard of seaworthiness. Nevertheless he found that this duty had been met, and accordingly gave judgment for defendant. The question

on this appeal is whether defendant's steps taken to provide goggles excuse it from liability for unseaworthiness.

It seems very difficult for courts to accustom themselves to the strict liability of unseaworthiness, perhaps because it is cut on such a different pattern than the familiar negligence action. The duty it creates is absolute; the exercise of due care will not discharge this obligation. If an injury occurs as a result of an unseaworthy condition it matters not what efforts the defendant took, or might have taken, to avoid the injury. Blameless he may be; nevertheless he is liable. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Van Carpals v. S.S. American Harvester, 2 Cir., 297 F.2d 9. He is liable even if the unseaworthy condition is created by the negligence of the plaintiff. Grillea v. United States, 2 Cir., 232 F.2d 919, 923. As Judge Learned Hand said in that case: "It may appear strange that a longshoreman, who has the status of a seaman, should be allowed to recover because of unfitness of the ship arising from his own conduct in whole or in part. However, there is in this nothing inconsistent with the nature of the liability because it is imposed regardless of fault; to the prescribed extent the owner is an insurer, though he may have no means of learning of, or correcting, the defect. Indeed, as to these it is a kind of 'Workmen's Compensation Act'; though limited by the value of the ship and by the fact that it only covers injuries caused by the defects that we have mentioned." Hence the sole question before us is whether an unseaworthy condition existed and caused the plaintiff's injury.

Liability for failure to furnish a seaworthy vessel is absolute, but a vessel need not be accident-free to be "seaworthy." Liability for injuries caused by the vessel and its appurtenances accrues only when the owner has failed to furnish a vessel and appurtenances "reasonably fit for their intended use."

Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 550, 80 S.Ct. 926, 932, 4 L.Ed.2d 941. On the other hand, this does not mean, as my brothers seem to believe, that he must make only reasonable efforts to furnish seaworthy appliances. He has an absolute duty to furnish a reasonably fit ship.

My brothers accept the proposition that a vessel is not seaworthy unless goggles are provided for tasks such as were here involved. Nevertheless they believe that the ship and its appurtenances were "reasonably fit for their intended use," apparently because steps were taken to make the goggles available. This view confuses the nature of the obligation, however, because it suggests that liability is limited to defendant's negligence. It seems to be an attempt to introduce negligence concepts by the back door, as it were, utilizing the rule that a seaworthy ship and its appurtenances need only be "reasonably fit for their intended use" to evade the Supreme Court's repeated admonitions that "the duty to provide a seaworthy ship depends not at all upon the negligence of the shipowner or his agents." Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 548, 80 S.Ct. 926, 932, 4 L.Ed.2d 941. See also Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120; Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354.

If the fact that a seaman is not wearing goggles while engaging in rust-chipping is itself an unseaworthy condition, the defendant is liable, whatever steps it took, unsuccessfully, to see that they were worn. The precise question whether such a condition is unseaworthiness has never been decided, but the guiding principles are clear. Failure to provide an appliance necessary for safe completion of shipboard operations will render a ship unseaworthy. Poignant v. United States, 2 Cir., 225 F.2d 595; The T. J. Hooper, 2 Cir., 60 F.2d 737, certiorari

denied Eastern Transportation Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571. See also dissenting opinion of Harlan, J., Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 576, 80 S.Ct. 926, 4 L.Ed.2d 941. If safe appliances are available, moreover, but due to the negligence of plaintiff or a co-worker they are not used, the vessel may thereby be rendered unseaworthy. Grillea v. United States, supra, 2 Cir., 232 F.2d 919. And the doctrine is not limited to instances of initial unseaworthiness, but applies to transitory conditions arising in the course of the ship's operations. Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941.

If a ship furnishes an appliance which cannot be used in a normal manner without a safety device or without certain precautions being taken, then if the device is not furnished or the precautions not taken, the ship is unseaworthy. Krey v. United States, 2 Cir., 123 F.2d 1008 (shipboard shower without handle); Campbell v. Tidewater Associated Oil Co., D.C.S.D.N.Y., 141 F.Supp. 431 (tank with cleats for climbing, but not hand-rails). Thus, for example, if a ship had on it a pump which sprayed acid in the course of its use, so that it could be safely used only if a movable plastic shield were placed over it, the ship would be unseaworthy if no shield were installed. Even if there were a shield, but the pumpman negligently set it aside, the shipowner, it would seem clear, would be liable if as a result the pumpman was injured.

These principles control this case. I can see no functional difference between the goggles here and the shield in the hypothetical situation. A dangerous condition was created by the fact that a necessary safety appliance was not employed. There is no dispute that the injury would not have occurred had Ezekiel been wearing goggles. Since he did not use them, the further question whether the goggles were "reasonably fit for their intended use" does not arise. Goggles were necessary if rust was to be chipped

safely; thus the duty to see that they were used was absolute.

The doctrine of unseaworthiness imposes strict liability in order to promote the taking of greater precaution at sea, because such liability is considered necessary to protect seamen against the special hazards and conditions of maritime service and because the owner "is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost." Seas Shipping Co. v. Sieracki, supra, 328 U.S. 85, 94, 66 S. Ct. 872, 877, 90 L.Ed. 1099. Liability here fosters all these ends. I must therefore disagree with Judge Holland and my brethren, and hold the ship unseaworthy under current statements of that principle. The judgment should be reversed and the action remanded for the award of damages.