**Nicolo CAPUTO, Plaintiff,**

v.

**Theodore W. KHEEL and Raymond J. Scully, as Trustees in Bankruptcy for A. H. Bull Steamship Co., Inc. and A. H. Bull & Co. (Inc.), Defendants and Third-Party Plaintiffs,**

v.

**INTERNATIONAL TERMINAL OPERATING CO., Inc. and Air Preheater Corp., Third-Party Defendants.**

No. 66 Civil 2139.

United States District Court
S. D. New York.

Oct. 31, 1968.

Alvin I. Apfelberg, New York City, for plaintiff.

Kirlin, Campbell & Keating, New York City, for defendants and third-party plaintiffs, Daniel J. Dougherty, James R. Campbell, of counsel.

Alexander, Ash & Schwartz, New York City, for third-party defendant International Terminal Operating Co., Inc., Joseph Arthur Cohen, New York City, of counsel.

McLaughlin, Fiscella & Biancheri, New York City, for third-party defendant Air Preheater Corp., Albert T. Gervais, Huntington, N. Y., John Furman, Jr., New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEINFELD, District Judge.

Plaintiff, a longshoreman, injured while loading cargo aboard the SS KATHRYN, seeks damages from the defendants, trustees in bankruptcy of the shipowner, A. H. Bull Steamship Co., Inc. The trustees, in the event of recovery against them, seek indemnity from International Terminal Operating Co., Inc., the stevedore and the plaintiff's

employer, and also from Air Preheater Corp., the shipper of the cargo on which plaintiff was working when he was injured. International, in the event of recovery against it, seeks indemnity from Air Preheater.

The case has had a long history, which has resulted in a number of defenses additional to those usually interposed in actions of this type. The accident happened on August 26, 1960. In September of that year plaintiff commenced an action in this court on the jury side against Bull, which, then as now, filed a third-party complaint against International for indemnity. International filed a fourth-party complaint against Air Preheater Corp. for indemnity in the event it was called upon to indemnify Bull. After pretrial procedures had been concluded, the case was assigned for trial in May, 1962, but upon plaintiff's refusal that it be tried as an admiralty cause, it was dismissed for lack of jurisdiction.

In June, 1962, plaintiff commenced another action in the New York State Supreme Court against Bull Steamship and Air Preheater.[1] In October, 1965, he voluntarily discontinued his action against Bull. The case was tried to a jury as against Air Preheater in March, 1966, and a verdict rendered in favor of the defendant. Thereafter, on July 15, 1966, almost six years after the accident, plaintiff commenced this action. All defendants plead laches, claiming prejudice due to the delay. In addition, Air Preheater, since it successfully resisted plaintiff's claim that it was negligent, asserts against International and Bull defenses of collateral and also equitable estoppel. We turn first to plaintiff's claim.

Plaintiff was one of a gang engaged in loading preheaters, heavy machinery cargo, into the No. 2 lower hold of the SS KATHRYN. The preheaters came in sections and were approximately eleven feet, two inches high, including the wooden skids underneath, and about eighteen feet long. They had been manufactured, assembled and prepared for shipment by Air Preheater at its factory in Wellsville, New York. They were transported from the factory by railroad flatcar and placed aboard a lighter moored alongside the SS KATHRYN, from which they were loaded aboard the vessel by its winches, boom and tackle. The first piece was removed from the lighter and was lowered into the lower No. 2 hold. It was secured by a bridle with four hooks inserted into padeyes welded into the upper corners. Before positioning in the hold, the piece was placed so that one side was about a foot from the permanent ladder at the aft end of the hatch. Plaintiff and a co-worker went up the ladder, undid the hooks at that end and then wiggled on their buttocks across the top over the length of the cargo piece, where they undid the two hooks there. They then wiggled back across the length and descended the aft ladder. The cargo piece was then maneuvered into place by means of rollers and bars and stowed under the coaming. Plaintiff testified that as he wiggled across the top of the cargo, he observed the surface was very slippery, and "it looked like grease on the top"; also that when he descended, his gloves and trousers were greasy.

A second draft of cargo, similar to the first, was lowered in short order by the same means. It was landed six or seven feet from the permanent ladder that plaintiff had used to get to the top of the first cargo lift. Plaintiff testified the hatch boss, in this instance as in the first, told him to "go up and unhook the piece." Plaintiff climbed up on a steel angle bar, a vertical flange, about three inches on each side at a corner of the cargo. He put both legs around the post and with both hands shinnied up. When he neared the top, he held on to the top of the piece with his right

1. Bull cross-claimed against Air Preheater and impleaded International, seeking indemnity in the event it was found liable to the plaintiff. International also cross-claimed against the other defendants and the plaintiff in the event it was found liable.

hand and reached out with his left for the hook in the padeye, which was above his head and which he could not see; while so engaged, his right hand slipped and he fell to the deck. The angle bar, plaintiff testified, had no grease or cosmoline on it.

The hook which plaintiff tried to reach was about six feet above his height. It was apparent that he could not reach it except by means of a ladder or other safe method. Portable ladders were available. Plaintiff, however, did not use, nor did he request, a ladder. After he had shinnied across the first piece, he knew his gloves and clothes were greasy. Under these conditions, his shinnying up on the steel frame of the second piece, which was without grease or cosmoline on it, was utter carelessness; in effect he created a greased flag pole. Apart from a portable ladder, there were other reasonably safe means to reach the hook. The top of the cargo where the padeyes were located was about a foot below the 'tween deck, and the hooks were readily and safely accessible from that position; or plaintiff could have been hoisted up by a co-worker or raised on a pallet placed on a hi-lo that was in the hold; or he could have used parts of the machinery as suitable footholds. Plaintiff, in disregard of his safety, undertook an obviously dangerous way to get to the hook when there was no occasion for him to do so.

Even were I to accept plaintiff's testimony that his hatch boss gave him specific orders to "go up and unhook the piece," which I do not, the order was not to go up by way of the angle iron. Indeed, plaintiff acknowledges that his boss did not tell him how to unhook the piece. Plaintiff, a longshoreman of twenty years experience in heavy cargo lifting and stowing, knew when the machinery was lowered into the hold that the slack bridle had to be unhooked; as he acknowledged, this was an "everyday longshore detail." His testimony that his boss told him to do that which he knew was routinely required and had repeated what he had told him with respect to the first piece is not credible. But even if the specific direction had been given, it was not to shinny up an angle iron, "which was never intended to serve as a ladder," [2] nor to do so with greased gloves and clothing. Plaintiff was still required to use an available safe method to carry out his assignment.[3] He received no direction to the contrary.

Plaintiff claims that the vessel was unseaworthy because parts of the heavy machinery were covered with cosmoline. The coating was necessary to protect the exposed surfaces. It was a universal practice to do so and the custom was well known in the New York Harbor. The preventive was obvious to those working on the draft. In the instant case the draft was in the process of being stowed; it had not yet become part of the ship's stow; unhooking the bridle hooks was an ordinary, routine job; and it presented no unusual hazards in its handling.[4] The cargo piece could have been safely unhooked with proper handling, and there is no evidence to the contrary.

But beyond this, the evidence does not support any claim that such cosmoline as there may have been on the second piece played any part whatsoever in the plaintiff's fall. He testified there was no cosmoline on the angle bar on which he shinnied up. The sole proximate cause of his fall was plaintiff's own carelessness, his shinnying up the

---

2. Cf. Guarracino v. Luckenbach S.S. Co., 333 F.2d 646, 648 (2d Cir.), cert. denied, 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed. 2d 543 (1964).

3. Cf. Guarracino v. Luckenbach S.S. Co., supra note 2; Mosley v. Cia. Mar. Adra, S.A., 314 F.2d 223, 229 (2d Cir.) (Friendly, J., concurring), cert. denied, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963);

Ezekiel v. Volusia S.S. Co., 297 F.2d 215, 91 A.L.R.2d 1013 (2d Cir. 1961), cert. denied sub nom. Pinto v. States Marine Corp., 369 U.S. 843, 82 S.Ct. 874, 7 L. Ed.2d 847 (1962).

4. Cf. Carabellese v. Naviera Aznar, S.A., 285 F.2d 355, 359–360, 90 A.L.R.2d 701 (2d Cir. 1960), cert. denied, 365 U.S. 872, 81 S.Ct. 907, 5 L.Ed.2d 862 (1961).

pole with his greasy gloves and clothes and then trying to reach the hook with his greased gloved left hand while holding on with his greased gloved right.[5] There is no evidence that plaintiff's right hand, his left hand, or any portion of his body came into contact with cosmoline or any greasy substance on the second piece while so engaged. Here the ship had portable ladders and other reasonably safe equipment which were available to plaintiff, but he failed to use them. It discharged its duty to furnish a vessel and appurtenances reasonably fit for their intended use.[6] As to the claim of negligence, there was not the slightest act or conduct on the part of the shipowner which contributed to the occurrence.

In sum, I find that the accident was due solely and only to plaintiff's own negligence, and that the vessel was not unseaworthy and the defendant was not negligent.

The question remains with respect to Bull's claim against International and Preheater for indemnity for its reason-

able expenses in resisting plaintiff's claim. We consider first the claim against International.

■ The finding that the ship was neither negligent nor unseaworthy does not, however, relieve International from liability to the shipowner for any breach of its implied warranty of workmanlike service.[7] Bull's potential liability centered about International's conduct of the cargo operation. Plaintiff's negligent conduct in pursuing an obviously unsafe means to reach the hooks is sufficient, without more, to hold the stevedore for breach of the warranty.[8] Also, the failure of the hatch boss, who was present, to stop plaintiff from pursuing his ill-chosen course constituted a breach of the warranty.[9]

■■ International, however, claims that by express agreement it is exonerated from any indemnity liability. It is true that the parties may contract to eliminate the implied warranty,[10] but such a disavowal must be clearly expressed.[11] To support its position that

5. Cf. Mosley v. Cia. Mar. Adra, S.A., 314 F.2d 223 (2d Cir.), cert. denied, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963); Santomarco v. United States, 277 F.2d 255, 257 (2d Cir.), cert. denied sub nom. American Stevedores, Inc. v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L. Ed.2d 52 (1960).

6. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

7. Guarracino v. Luckenbach S.S. Co., 333 F.2d 646, 648 (2d Cir.), cert. denied, 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964); Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779, 782 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964).

8. Mortensen v. A/S Glittre, 348 F.2d 383, 385 (2d Cir. 1965); Nicroli v. Den Norske Afrika-Og, etc., 332 F.2d 651, 656 (2d Cir. 1964); Damanti v. A/S Inger, 314 F.2d 395, 399 (2d Cir.), cert. denied sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963).

9. Guarracino v. Luckenbach S.S. Co., 333 F.2d 646, 648 (2d Cir.), cert. denied,

379 U.S. 946, 85 S.Ct. 439, 13 L.Ed. 2d 543 (1964); Misurella v. Isthmian Lines, 215 F.Supp. 857, 862 (S.D.N.Y. 1963), aff'd, 328 F.2d 40 (2d Cir. 1964); cf. Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779, 780, 782 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 262, 13 L. Ed.2d 186 (1964); Nicroli v. Den Norske Afrika-Og, etc., 332 F.2d 651, 656 (2d Cir. 1964); De Gioia v. United States Lines, 304 F.2d 421, 423-424 (2d Cir. 1962).

10. Pettus v. Grace Line, 305 F.2d 151 (2d Cir. 1962); McCross v. Ratnakar Shipping Co., 265 F.Supp. 827, 841 (D.Md. 1967).

11. Italia Societa, etc. v. Oregon Stevedoring Co., 336 F.2d 124, 127-128 (9th Cir. 1964), cert. denied, 379 U.S. 973, 85 S.Ct. 668, 13 L.Ed.2d 565 (1965); Pettus v. Grace Line, 305 F.2d 151, 155 (2d Cir. 1962); Drago v. A/S Inger, 305 F.2d 139, 142 (2d Cir.), cert. denied sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 371 U.S. 925, 83 S.Ct. 292, 9 L. Ed.2d 232 (1962); see also M. Norris, Maritime Personal Injuries, sec. 61 at 149 (2d ed. 1966).

the parties expressly eliminated any implied in fact warranty of workmanlike performance, International relies upon two clauses in the stevedoring contract. The substance of its position, as this Court understands it, is that the express indemnity provision in the contract covers only damage claims to the ship, cargo and equipment, but does not extend to personal injury losses, and that as to the latter, the parties under another paragraph disavowed any implied in fact warranty with its concomitant indemnity obligation in the event of a breach. First, International refers to paragraph 8, under which it expressly agrees to indemnify Bull for any damage "to the ship and its equipment, * * * to cargo, or loss of cargo * * * through [International's] negligence." Thus, it is contended that the failure to mention personal injury losses precludes any express indemnity for such losses. Next, International relies upon paragraph 21 to foreclose indemnity upon an implied in fact warranty. The paragraph reads:

> "This contract constitutes the full agreement between the parties hereto and no warranty of any nature is to be implied *from any of the wording of this agreement.*" (Italics supplied.)

This clause fails to meet the test which the courts have demanded: a clear and explicit agreement by the parties to eliminate an implied warranty that the stevedore will do his job in a workmanlike manner. Indeed, in the light of the stevedore's commitment in paragraph 2(b) to provide all necessary labor and supervision for "the proper and efficient conduct of the work"—language which the Supreme Court has said "constitutes 'a contractual undertaking to [perform] "with reasonable safety"' * * * and

to discharge 'foreseeable damages resulting to the shipowner from the [stevedore's] * * * improper performance'"[12]—it would be straining to conclude that by paragraph 21 the shipowner not only surrendered its "valuable right to a warranty of workmanlike service,"[13] but also assumed the risk of loss for personal injuries resulting from the stevedore's unworkmanlike performance. Whether expressly stated or not, workmanlike performance of the job it was engaged to do is the very essence of the agreement, and if the parties intended to eliminate so vital an undertaking, they failed to achieve their purpose. It is a simple matter to use unequivocal language to negate the implied in fact warranty.

Accordingly, Bull is entitled to indemnity for the reasonable legal fees and expenses incurred in resisting the plaintiff's claims. If the parties cannot agree upon the amount, each may submit appropriate evidence, and the Court will determine the issue.

Bull also seeks indemnity from Air Preheater upon a contention that the design, manufacture and preparation of the cargo piece for shipment were improper. However, the application of cosmoline to the preheaters in preparation for shipment conformed to accepted industry standards. While it is true that industry practice is some evidence of prudent conduct, it is not conclusive on this issue.[14] However, the evidence fails to sustain the charge of negligent conduct on the part of Air Preheater in the preparation of the preheater unit for cargo handling purposes. This also disposes of International's similar claim for indemnity against Air Preheater.

---

12. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 565, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

13. De Gioia v. United States Lines, 304 F.2d 421, 426 (2d Cir. 1962).

14. Texas & P. Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed.

905 (1903); The T. J. Hooper, 60 F.2d 737, 740 (2d Cir.), cert. denied sub nom. Eastern Transp. Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L. Ed. 571 (1932); Rodriguez v. Coastal Ship Corp., 210 F.Supp. 38, 43 (S.D. N.Y.1962).

The foregoing dispositions make it unnecessary to consider the defenses of laches and collateral and equitable estoppel urged by the various defendants.

The above shall constitute the Court's Findings of Fact and Conclusions of Law.