519 F.2d 129
 Robert J. LYTLE, Plaintiff,
v.
FREEDOM INTERNATIONAL CARRIER, S. A., et al.
Defendant-Third-Party Plaintiff,
v.
AMERICAN GRAIN TRIMMERS, INC., Third-Party
Defendant-Fourth-Party Plaintiff- Appellee,
v.
OSBORN-LANGE, INC., Fourth-Party Defendant-Appellee.
Appeal of EMPLOYERS' SURPLUS LINES INSURANCE CO.,
Fourth-Party Defendant.
 No. 74-1470.
 United States Court of Appeals,
Sixth Circuit.
 June 13, 1975.
 
 David J. Cook, Merkel, Campbell, Dill & Zetzer, Henry J. Zetzer, Cleveland, Ohio, for appellant.
 John L. Foster, Foster, Meadows & Ballard, Detroit, Mich., David G. Davies, Cleveland, Ohio, for appellee.
 Before PHILLIPS, Chief Judge, ENGEL, Circuit Judge, and CECIL, Senior Circuit Judge.
 ENGEL, Circuit Judge.
 
 
 1
 Robert J. Lytle, the original plaintiff in the action before the district court, brought suit in June of 1969 against Freedom International Carriers, S. A. et al. (Freedom), seeking $1,000,000 in damages for injuries he had sustained while employed upon Freedom's ship, the "Meliton," as a longshoreman. Lytle's complaint in admiralty alleged two causes of action, the first charging Freedom with negligence and the second charging it with breach of the warranty of seaworthiness which Lytle alleged the shipowner owed him.
 
 
 2
 Shortly after Lytle brought suit against Freedom, that party filed in turn a third-party complaint seeking indemnity from American Grain Trimmers, Inc. (American), the stevedore which employed Lytle, relying upon the indemnification doctrine of Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). American at the time had in force a basic policy of liability insurance with the Liberty Mutual Insurance Company (Liberty) in the amount of $100,000 and in addition thereto, had a policy of excess insurance liability coverage with appellant Employers' Surplus Lines Insurance Company (Employers').
 
 
 3
 In July of 1971 an agreement was reached whereby a consent judgment was entered in favor of Lytle in the amount of $170,000 against Freedom. The consent judgment in turn provided that Freedom was indemnified in the amount of $152,500 from American. Of this latter sum, Liberty paid the full $100,000 limits of its policy. American, its insurance broker, appellee Osborn and Lange, Inc. (Osborn), and appellant Employers' each contributed $17,500 under an interim settlement agreement in which each, however, reserved its right of recovery against any other party who might ultimately be found liable.
 
 
 4
 The consent judgment was entered upon the stipulation of Lytle, Freedom, and American, on July 20, 1971 and on August 12, 1971 satisfactions of the judgments so entered were filed by Lytle and by Freedom, upon its separate third-party complaint. On September 30, 1971 American filed in this same action a motion with the district court for leave to file a so-called "Fourth-Party Complaint" against Employers' and Osborn as Fourth-Party defendants. The complaint alleged that under the terms of its policy of liability insurance, Employers' was obligated to pay so much of the original judgment as was in excess of the Liberty policy. American sought recovery of its contribution of $17,500. Defendant Osborn also cross-claimed against Employers' for recovery of its $17,500 contribution made pursuant to the settlement agreement. Both American and Osborn also sought recovery of costs, attorney fees, and interest.
 
 
 5
 District Judge Don J. Young granted summary judgments against Employers' and in favor of American and Osborn in the amount of $17,500 each, with interest thereon at 8%. Judge Young also ordered the payment of attorney fees in the amount of $3,434 to American and in the amount of $1,978.93 to Osborn. We affirm.
 
 
 6
 We deal with the several grounds of appeal in the order in which they are raised.
 
 I. The Fourth-Party Complaint
 
 7
 Employers' contends, for the first time on appeal, that the district court was without any subject matter jurisdiction to enter judgment upon the "Fourth-Party Complaint", so-called, because it was filed 49 days after the judgments in the principal litigation had been fully satisfied, a circumstance which it urges completely disposed of all of the issues in litigation and thus brought the entire lawsuit to an end. Employers' relies particularly upon Wayman v. Southard, 23 U.S. 1, Wheat 1, 6 L.Ed. 253 (1825); Riggs v. Johnson County, 73 U.S. 166, 6 Wall. 166, 18 L.Ed. 768 (1867); Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390 (1884) and Central National Bank v. Stevens, 169 U.S. 432, 18 S.Ct. 403, 42 L.Ed. 807 (1898).
 
 
 8
 Employers' recognizes the propriety, generally, of filing third-party complaints upon leave of court and in particular of third-party complaints seeking indemnification and contribution in maritime claims, Rule 14 Federal Rules of Civil Procedure. Employers' also recognizes that no specific time limitation for filing third-party complaints is set forth in Rule 14. At the same time, Employers' urges upon us the language of Chief Justice Marshall in Wayman v. Southard, supra, that:
 
 
 9
 "The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied." 23 U.S. 1, 11, Wheat 1, 11, 6 L.Ed. 253.
 
 
 10
 Thus, it argues, the jurisdiction of the district court ended upon the satisfaction of the original judgments and there was thereafter no jurisdiction to entertain the fourth-party complaint.
 
 
 11
 Neither Wayman v. Southard, nor the other cases cited, deals with the circumstance where the district court purports to exercise jurisdiction after the filing of satisfactions of judgment. Nevertheless, contends Employers', these cases by implication hold that the jurisdiction of the court was at an end upon the satisfaction of the judgment.
 
 
 12
 The appellees, on the other hand, rely upon those cases which hold generally that jurisdiction over still-pending ancillary claims survives the final disposition of the principal claims. Dery v. Wyer, 265 F.2d 804 (2nd Cir. 1959); Oakes v. Graham Towing Co., 135 F.Supp. 485 (E.D.Pa.1955); Murphy v. Kodz, 351 F.2d 163 (9th Cir. 1965). Appellees' cited cases are also distinguishable from the case here for they all involve circumstances in which a third-party complaint had been filed and was pending prior to the filing of satisfactions of judgment, or settlement of the original cause of action.
 
 
 13
 Whatever might have been the power of the district court to deny the motion to file the fourth-party complaint, or to have dismissed it upon the motion of Employers' that it was untimely filed, we are satisfied that upon the undisputed facts here, an independent basis of subject matter jurisdiction in the district court existed and that this independent basis was sufficient to defeat an objection thereto raised for the first time on appeal. The complaint which was filed in the district court plainly alleged the existence of a case and controversy within the meaning of Article III of the Constitution. Likewise, the amount in controversy was alleged to be in excess of $10,000. Finally, the well pleaded facts of the complaint are sufficient to invoke the diversity jurisdiction of the district court under 28 U.S.C. § 1332, thus meeting the pleading requirements of Rule 8, Federal Rules of Civil Procedure. Williams v. United States, 405 F.2d 951 (9th Cir. 1969), Quality Beverage Co. v. Sundrop Sales Corp. of America, 291 F.Supp. 92 (E.D.Wis.1968).
 
 
 14
 Though the fourth-party plaintiff sought to append its action to the original but closed action, and the court allowed it to do so, the complaint could fully stand on its own as an independent action. We, therefore, regard the district court in accepting the filing of the complaint to have acquired full subject matter jurisdiction over the controversy as if it had been started as a fully independent suit. Any defect in the proceedings below was procedural and not jurisdictional, and was waived by appellant's failure to object in the court below. Mackay v. Uinta Development Co., 229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913).
 
 II. Propriety of Summary Judgment
 
 15
 Appellant's claim that the district court erred in granting summary judgment rests upon two separate grounds. First, appellant claims that the district court failed to comply with the requirements of Rule 56(d) in granting partial summary judgment on the liability issue. Rule 56(d) requires that where only a part of a case can be disposed of by summary judgment, the district judge should enter an order to indicate which portion of the case is no longer in controversy, and directing further proceedings in the action. Here no such order was entered. However, Rule 56(d) is designed for those situations in which issues still remain to be litigated. Such is not the case here. The district court, in granting the motion for summary judgment, implicitly reserved only the question of damages. Under Rule 56(c) no order listing the remaining issues to be litigated was required.
 
 
 16
 A second basis for Employers' claim that summary judgment is inappropriate is its contention that there are genuine issues of material fact which still remain to be decided and which require a trial upon the merits. In its brief, Employers' states that " . . . the complexity of the case required inquiry into the facts to clarify the application of the law". The difficulty with this contention is that appellant's claims are general and conclusory. Nowhere in its brief does Employers' state precisely what material facts are in dispute, and indeed, we can find none. Our careful examination of the entire record fully satisfies us that this case involves circumstances in which summary judgment procedures are particularly useful:
 
 
 17
 "In the insurance field the sumary (sic) procedure has been effectively used and summary judgment rendered in the following situations, either on the basis of admitted facts, or upon facts clearly established (as there often can be in these situations): . . . where liability depends upon the construction of a clause or an exception that presents a legal question for the court."
 
 
 18
 6 J. Moore, Federal Practice, at 2561-62 (2d ed. 1972)
 
 
 19
 Semon v. Royal Indemnity Co., 279 F.2d 737 (5th Cir. 1960); Hooker v. New York Life Ins. Co., 66 F.Supp. 313 (N.D.Ill.1946); Fink v. Northwestern Life Ins. Co., 29 F.Supp. 972 (E.D.Mich.1939); Howell v. Allied Mutual Casualty Co. of Des Moines, Iowa, 197 F.Supp. 378 (D.Neb.1961).
 
 
 20
 Accordingly, we find no merit in the contention that summary judgment was either premature or inappropriate here.
 
 III. Policy Coverage
 
 21
 The most serious issue advanced on appeal is whether the indemnity claim of American was excluded from coverage by endorsement No. 2 of the insurance policy which Employers' issued.
 
 
 22
 It is essential to understand at the outset that the Employers' policy was issued as an "Excess Employers' Liability" policy to cover any liability of American in excess of the $100,000 limits for each person in the Liberty Mutual Insurance Company policy. This was expressly noted in endorsement No. 1 of the Employers' policy. Thus, Employers' policy must be read in the light of the principal liability insurance policy written by Liberty, which acknowledged its liability and paid the full limits of its policy. Appended hereto are the one-page Employers' policy and endorsement No. 2 thereto which is claimed to exclude Employers' from liability for this particular loss.
 
 
 23
 It will be noted that in Employers' principal policy, under Item 4, "Exceptions", it is provided that the insurance policy differs from the policy which it follows in certain stated particulars, and that expressly noted are the adjustment of rate, proportion of risk, premium, and finally under "D. Other", there is no notation of any further exception. Notwithstanding the failure to list any other exception to the policy on the main body thereof, endorsement No. 2 purports to exclude liability arising under (A), the Federal Employers Liability Act; (B) United States Longshoremen's and Harbor Workers' Compensation Act; (C) The Jones Act; (D) General Maritime Law; (E) Admiralty Law, and (F) "Any Subsequent Amendments or Additions Thereto".
 
 
 24
 Employers' main contention is that American's obligation to indemnify Freedom under Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, is a liability arising under "General Maritime Law" or "Admiralty Law", and is thus excluded by endorsement No. 2. This is particularly true, Employers' argues, in view of this circuit's ruling in Liberty Mutual Insurance Co. v. Fruehauf Corp., 472 F.2d 69 (6th Cir. 1972) in which we expressly declined to extend the Ryan doctrine to a somewhat analogous non-admiralty context.
 
 
 25
 At the outset we do not agree with appellant's assertion that our decision in Liberty Mutual v. Fruehauf, supra, conclusively disposes of the issue in its favor. In Liberty our court was above all observing the mandate of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 188 (1938) to follow the applicable West Virginia law in that diversity case. As clearly pointed out, the court concluded that under circumstances of that case, West Virginia would not create as a part of its substantive law a "Ryan-like warranty in this non-admiralty context". Liberty Mutual v. Fruehauf, supra, 472 F.2d at 71.
 
 
 26
 We look to the language of Ryan itself and to those subsequent Supreme Court decisions which have had occasion to apply its doctrine in other factual circumstances in determining the nature of the stevedore's liability. Ryan specifically referred to the contractor's breach of its purely consensual obligation owing to the shipowner to stow the cargo in a reasonably safe manner:
 
 
 27
 "This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of his manufactured product."
 
 
 28
 Ryan, supra, 350 U.S. at 133-134, 76 S.Ct. at 237.
 
 
 29
 Likewise in Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), the Supreme Court applied Ryan and reiterated that: "Petitioner's claim for indemnity primarily rests on the contractual relationship between it and respondent. While the stevedoring contract contained no express indemnity clause, it obligated respondent 'to faithfully furnish such stevedoring services as may be required', and to provide all necessary labor and supervision for 'the proper and efficient conduct of the work'." 355 U.S. at 565, 78 S.Ct. at 439 (1958) (footnote omitted); see also Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). It would thus appear that the Supreme Court in applying the Ryan doctrine has considered it a liability based upon the stevedore's contract, a contractual obligation based upon the particular relationship between the stevedore and the shipowner, and not necessarily upon principles of admiralty or general maritime law.
 
 
 30
 We conclude that Employers' has not met its burden of excluding Ryan doctrine liability from the coverage of its policy by the non-specific language contained in endorsement No. 2. General rules universally applicable in the construction of insurance policies oblige us to construe the entire policy and its endorsement as one document. Aetna Insurance Co. v. Houston Oil and Transport Co., 49 F.2d 121 (5th Cir. 1931); Nationwide Mutual Ins. Co. v. Akers, 340 F.2d 150 (4th Cir. 1965). We are bound as well to follow the general rule of construction that a document is to be construed against the preparer of it and, as well, the more specific rule that ambiguities in insurance contracts are to be construed against the insurer and in favor of coverage. Pennsylvania R. Co. v. Travelers Ins. Co., 226 F.2d 520 (6th Cir. 1955); McNally v. American States Ins. Co., 308 F.2d 438 (6th Cir. 1962).
 
 
 31
 Upon the undisputed facts before us, these general rules have particular force. The Employers' policy on its face contains no detailed coverage but is expressly dovetailed into the Liberty policy which did in fact cover American's liability to the extent of the limits thereof. Upon the face of the Employers' policy, the space providing for other exceptions to coverage was left blank. The exclusion for liability arising under General Maritime Law and Admiralty Law as set forth in the endorsement is non-specific. Against this we have the undisputed fact that American was principally involved in the business of stevedoring and the potential liability of stevedores under circumstances as existed here had to have been apparent to any insurer ever since the Ryan doctrine first came into being in 1956. If such a well established liability was not to be afforded coverage, surely it was incumbent upon Employers' clearly and specifically to exclude it. Had Employers' truly desired to exclude coverage of the liability involved here, we hold that it was obliged to do so specifically and that the generalized language was wholly inadequate under the circumstances.
 
 IV. Attorney Fees and Interest
 
 32
 Finally, Employers' urges that the district court erred in awarding attorney fees and pre-judgment interest at the rate of 8% per annum simple interest on the amounts which each appellee had contributed to the interim settlement agreement. Employers' claims that under the terms of the contribution agreement, no provision was made either for attorney fees or for pre-judgment interest and that it was error for the court to award such sums in disregard of the agreement of the parties. We find all these assertions to be without merit and conclude that the district court acted well within the discretion accorded to it under the circumstances. Awards of attorney fees under somewhat analogous circumstances have been allowed in Crosson v. N. V. Stoomvaart MIJ "Nederland", 409 F.2d 865 (2nd Cir. 1969); Shenker v. United States, 322 F.2d 622 (2nd Cir. 1963); Brown v. San Alberto Cia Armadora, S. A., 305 F.2d 602 (3rd Cir. 1962); DeGioia v. United States Lines Co., 304 F.2d 421 (2nd Cir. 1962), and Caputo v. Kheel, 291 F.Supp. 804 (S.D.N.Y.1968). In Idemnity Insurance Co. v. California Stevedore and Ballast Co.,307 F.2d 513 (9th Cir. 1962), the insurer, like here, claimed that Ryan liability was excluded by one of the contract provisions. After rejecting this claim, the court, without discussion of the legal questions involved, affirmed the district court's order awarding the stevedore judgment for counsel fees and related costs.
 
 
 33
 Likewise, we find it was not an abuse of his discretion or other error for the district judge to have awarded pre-judgment interest to appellees from the dates at which actual payment by them was made. While the three-way agreement between American, Employers' and Osborn made no mention of such interest, it expressly provided that "Each of the undersigned reserves all rights to proceed against one or both of the other parties to this Agreement to recover its contribution of $17,500 by either litigation or arbitration as it deems appropriate". By the decision of the district court which is affirmed here, it is determined that Employers' failed to honor the terms of its policy of excess liability coverage. The consequence of the wrongful failure was the requirement that the other parties to the interim agreement make good the default of Employers'. Under the general rules of restitution:
 
 
 34
 " . . . a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if: (a) the benefit consisted of a definite sum of money . . ."
 
 Restatement, Restitution, § 156
 
 35
 Employers' obligation to repay arose at the date the appellees were obliged to make their contribution to effect the mutually beneficial settlement. The district court, therefore, did not err in awarding interest from that date.
 
 
 36
 Accordingly, the judgment of the district court is affirmed.